UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF INDIANA
INDIANAPOLIS DIVISION

| | |
|---|---|
| JAMES GRUBBS, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| vs. ) | Cause No. 1:13-cv-1936-WTL-MJD |
| ) | |
| ANDREWS & COX, P.C. et al., ) | |
| ) | |
| Defendants. ) | |

## ENTRY FOLLOWING BENCH TRIAL

A bench trial was held in this case on July 1, 2015. Supplementing their final arguments, the parties submitted post-trial submissions on July 6, 2015. Pursuant to Federal Rule of Civil Procedure 52(a)(1), the Court now issues its findings of fact and conclusions of law.

## I.  PROCEDURAL BACKGROUND

On December 7, 2013, Plaintiff James Brent Grubbs filed suit alleging Fair Debt Collection Practices Act ("FDCPA") violations against American Financial Credit Services, Inc. ("AFCS"), Andrews & Cox, P.C., d/b/a Bleecker, Brodey & Andrews[1] ("BB&A"), Ronald B. Brodey Professional Corporation ("RBPC"), and Eric S. Jungbauer. (Dkt. No. 1). In his amended complaint, Grubbs alleged that AFCS violated the FDCPA by engaging in collection activity before mailing verification of the debt. (Dkt. No. 13). He further alleged that BB&A, RBPC, and Eric Jungbauer violated the FDCPA by using false, deceptive, or misleading representations in connection with the debt collection; making false, deceptive, or misleading representations to Grubbs in connection with the debt collection; using a false, deceptive, or misleading means of

---

[1] Testimony at trial established that BB&A became Andrews & Cox, P.C., at some point, but continued to do business as BB&A because that is what it had been known as for nearly forty years.

collecting a debt; and using an unfair or unconscionable means to collect or attempt to collect a debt. *Id.* at 4.

On April 25, 2014, the claim against AFCS was dismissed with prejudice after AFCS and Grubbs reached a settlement agreement. Dkt. No. 30. On August 28, 2014, the claims against RBPC and Eric Jungbauer were dismissed with prejudice after RBPC and Jungbauer reached a settlement agreement with Grubbs. Dkt. No. 43.

Thereafter, BB&A and Grubbs filed cross-motions for summary judgment. On March 24, 2015, the Court granted in part and denied in part BB&A's motion, and granted in part and denied in part Grubbs' motion. The Court granted Grubbs' motion for summary judgment on the issue of whether BB&A violated the FDCPA by attempting to collect interest and on the issue of whether Grubbs had disputed the debt. However, the Court granted BB&A's motion for summary judgment on the issue of whether Grubbs had made payments on the debt.[2] Dkt. No. 56.

## II.   FINDINGS OF FACT

Grubbs and Stephen Andrews, a partner at Andrews & Cox, P.C., testified at the trial. On March 28, 2008, Grubbs went to Riverview Hospital ("Riverview") because he was in pain. After being released, Grubbs received a bill for nearly $8,000 in medical bills. However, the bill he received was not itemized, so he called Riverview and spoke with someone in the accounts receivable department in an attempt to receive a detailed list of services provided.[3] Riverview did

---

[2] The Court notes that its summary judgment ruling contains a scrivener's error: it states that Grubbs' motion regarding the availability of a remedy for additional damages against BB&A was denied, when it should have stated that BB&A's motion was denied. It appears that the parties understood the Court's intent and proceeded accordingly.

[3] Grubbs wanted an itemized bill to determine whether Riverview was charging him for things he had been billed for by the three physicians who treated him during his hospital stay.

2

not send the requested information to Grubbs. In April 2008, Grubbs called Riverview for a second time to request an itemized bill. After this phone call, Grubbs received a bill from Riverview that broke the costs down by each department but did not list the specific services for which he was charged.

Grubbs made three payments to Riverview totaling $120.00; after the third payment in June 2008, he refused to make any more payments until he received a detailed list of charges. In early September 2008, Grubbs received a collection notice from AFCS, a debt collector, regarding his remaining balance to Riverview. After receiving the letter, Grubbs sent a dispute letter to AFCS and Riverview asking for an itemized bill. Grubbs did not receive a response from either AFCS or Riverview.

In March 2013, Grubbs received a letter from BB&A stating that Grubbs was responsible for his balance of approximately $7,800 and an additional $3,000 of interest. Grubbs mailed a letter to BB&A disputing the charges and asking for an itemized bill. BB&A responded, providing Grubbs with an itemized bill. A few days later, BB&A filed a lawsuit in state court against Grubbs seeking to collect the debt of $7869.54 owed to Riverview. BB&A also claimed that it was entitled to interest of $3,152.98 on the underlying debt. BB&A filed a motion for summary judgment in which it erroneously stated that Grubbs had never made any payments on the bill and Grubbs had never disputed the debt. Grubbs hired an attorney because he needed assistance in responding to the motion for summary judgment in the state court action. After Grubbs responded to the BB&A's motion for summary judgment in the state court action, BB&A withdrew its motion and eventually dismissed its claims against Grubbs.

At no time during the state court action or the instant case did BB&A initiate any phone calls to Grubbs. Prior to the state court complaint, BB&A sent Grubbs one dunning letter and

also sent him a few other letters in response to letters it received from him. After BB&A filed the state court action, it did not send any letters, e-mails, or other form of communication to Grubbs. Grubbs does not allege that he had suffered any physical or monetary damage because of the state court action filed against him by BB&A; however, Grubbs' reputation could have been adversely affected by the state court case brought against him by BB&A.

Andrews testified that BB&A has filed 20-25 debt collection cases per year for 10 years for Riverview. Prior to the state court action, BB&A had attempted to and was successful in recovering interest on the underlying debt in similar debt collection cases based upon the following language in the patient consent form: "I hereby agree to pay Riverview Hospital and Physicians their charges for all services rendered during the hospitalization or medical treatment. I shall also be responsible for attorney fees required to collect for these services, to which may be added interest at the current legal rate." Dkt. No. 49-1 at 28. Andrews does not believe that the patient consent form has changed in the past few years. BB&A believed that it could collect interest on the underlying debt.

### III. CONCLUSIONS OF LAW

Because BB&A's liability has been established via summary judgment,[4] the only issue remaining before the Court is the amount of statutory damages, if any, that Grubbs should be awarded. The Court may award a plaintiff in a FDCPA claim statutory damages up to $1000. 15 U.S.C. ' 1692k(a)(2)(A). To determine the appropriate amount of statutory damages, the Court looks at "the frequency and persistence of noncompliance by the debt collector, the nature of such noncompliance, and the extent to which such noncompliance was intentional." *Tolentino v.*

---

[4] In its summary judgment ruling, the Court found that BB&A's statements that it was entitled to interest on the debt and that Grubbs had never disputed the debt were violations of the FDCPA.

4

*Friedman*, 46 F.3d 645, 651 (7th Cir. 1995) (citing 15 U.S.C. § 1692k(b)(1)).

In this case, the first factor, the frequency and persistence of noncompliance, favors BB&A. The parties dispute whether the frequency of noncompliance refers to the frequency with which a debt collector has violated the FDCPA overall or the frequency with which the debt collector violated the FDCPA with regard to the particular plaintiff. The parties cite, and the Court's own research has revealed, no Seventh Circuit authority on this issue. The district courts in this Circuit that have addressed the issue interpret the frequency factor with regard to violations against the individual plaintiff. *See Donnelly v. NCO Fin. Sys., Inc.*, 263 F.R.D. 500, 506 (N.D. Ill. 2009) (quotations and citations omitted) ("Courts in this jurisdiction have found that there is nothing in the clear language of the FDCPA which suggests that—in an individual action, as opposed to a class action—a court looks to a debt collector's practices regarding persons other than the plaintiff in determining the frequency and persistence of noncompliance."); *Cusumano v. NRB, Inc.*, No. 96 C 6876, 1998 WL 673833, at *2 (N.D. Ill. Sept. 23, 1998) (same); *Dewey v. Associated Collectors, Inc.*, 927 F. Supp. 1172, 1175 (W.D. Wis. 1996) (quotation omitted) ("[F]requency and persistence of noncompliance does not pertain to actions taken by a debt collector in other cases.").

As the court explained in *Dewey*, 927 F. Supp. at 1175:

> If the term "the number of persons adversely affected" is to have any meaning, it must be something additional to the "frequency and persistence of noncompliance." Otherwise, the term would be superfluous and contradict the familiar statutory canon that an interpretation should give meaning to all components of the statute. . . . . If Congress had intended courts to address the issue of a debt collector's comprehensive business activities in individual actions, it would have included "the number of persons adversely affected" or other similar language as a relevant factor in subpart (1) of § 1692k(b).

The Court agrees with this reasoning and finds that the frequency of noncompliance pertains to Grubbs himself and not all consumers. BB&A sent Grubbs a single dunning letter and also

responded to letters sent by Grubbs. It also filed the state court action. After filing the action, BB&A did not communicate with Grubbs at all. The Court finds that the frequency and persistence of noncompliance is minimal. As such, the Court finds that this factor favors BB&A.

The second factor, the nature of noncompliance, slightly favors Grubbs. BB&A did not falsely or deviously represent that Grubbs owed a debt to Riverview; Grubbs was required to pay the remaining balance to Riverview. However, BB&A did intend to state that it was entitled to interest on the underlying debt and, more importantly, falsely represented that Grubbs had never disputed the debt. BB&A believed that it was entitled to interest on the debt and had filed similar claims against debtors in similar situations to Grubbs. BB&A acknowledged but never explained the inaccuracy of its statement that Grubbs had never disputed the debt. Nonetheless, Grubbs suffered no readily apparent harm from the claim for interest or false representation by BB&A. BB&A withdrew its motion for summary judgment at the state court proceeding and dismissed its claim against Grubbs for interest. Grubbs was not tricked or conned into paying the interest. The only suggestion by Grubbs of possible harm was that his reputation could be damaged if someone were to look up his public records and see a case against him for not paying his debts. However, that would have been true even if BB&A had not sought interest or represented that he had not disputed the debt. Overall, this factor slightly favors Grubbs.

With regard to the third factor, the Court finds BB&A's noncompliance was inadvertent and a good faith misinterpretation of the law; therefore, this factor favors BB&A. BB&A has sought interest on the underlying debt in situations similar to the instant case, but this is the first FDCPA claim against BB&A. The Court finds that BB&A made a good faith misinterpretation of the law and therefore the third factor, the extent to which the debt collector's noncompliance

was intentional, favors BB&A.[5]

In this case, since two of the three factors favor BB&A and one factor slightly favors Grubbs, a minimal award of statutory damages in the amount of $100.00 is appropriate. *See, e.g.*, *Bartlett v. Heibl*, 128 F.3d 497, 499 (7th Cir. 1997) ("[I]t is within the district court's discretion to decide whether and if so how much to award, up to the $1,000 ceiling" of statutory damages).

## IV.  CONCLUSION

For the reasons set forth above, the Court awards Grubbs $100.00 in statutory damages pursuant to 15 U.S.C. § 1692k(a)(2)(A). Because Grubbs has brought a successful action under the FDCPA, he also is entitled to an award of reasonable attorney fees and costs. 15 U.S.C. ' 1692k(a)(3). Grubbs shall file an appropriate motion pursuant to Local Rule 54-1.

SO ORDERED: 9/22/15

_William T Lawrence_
Hon. William T. Lawrence, Judge
United States District Court
Southern District of Indiana

Copies to all counsel of record via electronic communication.

---

[5] The Court does not agree with Grubbs that an award of the maximum allowable statutory damages is appropriate. Grubbs argues that *Kaylor-Trent v. Bonewicz*, 910 F. Supp. 2d 1112 (C.D. Ill. 2012), supports his argument that the maximum award is warranted in the instant case. However, in *Kaylor-Trent*, all three factors weighed in favor of the debtor, whereas here two factors favor BB&A and one factor slightly favors Grubbs. In addition, the nature of the noncompliance varies significantly. In *Kaylor-Trent*, the debt collector made an intimidating phone call without announcing itself as a debt collector. *Id.* at 1114. Here, BB&A stated that it was a debt collector trying to collect Grubbs' debt. *Kaylor-Trent* does not support Grubbs' request for the maximum statutory damages.